**In re COATES, BENNETT & REIDENBACH, Inc.**

(District Court, W. D. New York. October 28, 1925.)

No. 8838.

1. **Bankruptcy** ⟨⟩310—**Creditor secured by warehoused property was required, immediately following filing of petition, to follow its security with prudence and care.**

A creditor, who was secured by warehoused property, was required immediately following the filing of a petition, and especially where it received notice from the trustee of a possible impairment of its pledged property, to follow its security with care, and particularly so where the company holding such security, a Canadian concern, was allied with the bankrupt and filed its petition for liquidation, in Canada.

2. **Bankruptcy** ⟨⟩312—**Negligence of representatives of secured creditors in failing promptly to follow pledged property could not operate to detriment of unsecured creditors.**

Negligence of representatives of a secured creditor, in failing promptly to follow pledged warehouse property, was imputable to such creditor, and would not be permitted to operate to the detriment of unsecured creditors.

3. **Bankruptcy** ⟨⟩312—**Secured creditor, disposing of pledge, for nominal sum, cannot prove balance as unsecured claim.**

Secured creditor, disposing of pledged collateral security for nominal sum, cannot prove balance as unsecured claim.

4. **Bankruptcy** ⟨⟩323—**Ordinarily pledgee, after sale of pledged property, may prove his claim in bankruptcy for any deficiency.**

Ordinarily, pledgee, after sale of pledged property, may prove his claim in bankruptcy for any deficiency, unless the pledgee was negligent in properly handling the security or protecting himself from loss.

5. **Bankruptcy** ⟨⟩312—**Negligence of secured creditor in failing promptly to possess itself of pledged warehouse property held not to estop it from proving as unsecured debt claim minus value of security not seized.**

Negligence of a secured creditor in failing to possess itself promptly of pledged warehouse property, for which negligence the referee deducted from the secured claim the market value of the pledged property at the time possession should have been taken by the creditor, *held* not to estop it from proving balance of claim as an unsecured debt, where such negligence had no relation to the sales price that in all probability it would have received on a seizure.

In Bankruptcy. In the matter of Coates, Bennett & Reidenbach, Inc., bankrupt, in which claimant, the Genesee Valley Trust Company appeared as secured creditor. On review of order of referee charging claimant with the market value of pledged property as of a certain date, and permitting claimant to prove balance of claim as an unsecured claim. Order affirmed.

Peck & Whitbeck, of Rochester, N. Y. (Ernest C. Whitbeck, of Rochester, N. Y., of counsel), for claimant.

Hubbell, Taylor, Goodwin & Moser, of Rochester, N. Y., for trustee.

HAZEL, District Judge. The question submitted for review is whether the claimant,

Genesee Valley Trust Company, used such care and diligence in endeavoring to obtain possession of property, pledged as collateral security for its debt on promissory notes made by the bankrupt, as a reasonably careful and prudent person would use under the same circumstances. The referee concluded that claimant was guilty of laches, and failed to exercise diligence and a proper effort to secure possession of the pledged property, consisting of a quantity of scrap iron and particularly specified in warehouse receipts. He did not disallow the entire claim, but charged claimant with the value of the scrap iron on the day the Consumers' Metal Company, Limited, a Canadian company, failed in business, fixing the value at $5 per ton on 1,200 tons, and then deducted from claimant's secured claim the sum of $6,000, allowing it to prove the balance as an unsecured debt.

[1] The referee, in my judgment, has given equitable consideration to the involved questions. His conclusions on the facts should not be disturbed, unless it is shown that he was clearly wrong in applying laches to the secured creditor, and that there was palpable failure on his part to apply the equities. The filed stipulation of facts is perhaps susceptible of different inferences, but I think the inferences drawn by the referee are not unwarranted, namely, that claimant did not follow its security with sufficient prudence and care, as it should have done immediately following the filing of the petition in bankruptcy herein, and especially after the Consumers' Metal Company, Limited, which was allied with the bankrupt herein, filed its petition for liquidation in Canada.

[2] Claimant's contention that everything was done that reasonably could be done to protect the security, and that it would have been expensive to move the scrap iron, especially as its value, and consequently the value of the security, became greatly depreciated, has not been overlooked by me; but it, I think, fails to outweigh the asserted negligence in timely guarding the property and taking steps to acquire it. It must be held accountable for the lack of foresight of its representatives, as in this particular such negligence is imputable to it, and cannot be permitted to operate to the detriment of the unsecured creditors. The record shows that notice was given claimant by the trustee of the possible impairment of its pledge, and it should have acted thereon with greater promptitude in possessing itself of the warehoused property. This principle, applicable to a bailee, finds support in Ouderkirk v. Cent. Nat. Bank of Troy, 119 N. Y. 263, 23 N. E. 875, and In re Strobel (D. C.) 163 F. 380.

[3-5] Counsel for the trustee has argued that claimant should not be permitted to prove any amount as an unsecured creditor, owing to its negligence. Of course, a secured creditor cannot be permitted to dispose of his pledge or collateral security at a nominal sum, and then come into a court of bankruptcy and prove the balance as an unsecured creditor; but I think that the referee, in treating the subject on equitable grounds, was justified in considering that, without fault on the part of the pledgee, the market value of the scrap iron greatly depreciated, following the liquidation proceedings of the Canadian company. He charged claimant with the value of the pledged property at such time only, and permitted proving the balance as an unsecured debt. It would not, in my opinion, be equitable to rule that claimant is estopped from proving its debt, after deducting the market value of its security at the time when possession should have been taken, since it is not proven that, due to negligence, the security became worthless or was depreciated in value.

The case in this aspect is analogous to In re Linforth, 87 F. 386. There permission was granted the mortgagee by the District Court to foreclose a mortgage in the state court on condition that no claim in bankruptcy would be filed for any deficiency. But, inasmuch as no marked laches were shown, owing to failure by the mortgagee to subsequently prosecute the suit to judgment, the court held that the contended laches were not so great as to warrant estopping the mortgagee from proving the deficiency after a sale. Ordinarily a pledgee, after sale of the pledged property, may prove his claim in bankruptcy for any deficiency (section 57h; and see Collier on Bankruptcy, vol. 2, pp. 1147, 1148), unless, of course, there was negligence in properly handling the security or protecting himself from loss. Nothing appears here to show that, on seizure and sale of the warehouse scrap iron, a larger price could have been obtained than the depreciated value found by the referee, or that the general creditors were prejudiced in this particular.

Accordingly I incline to the view that claimant's asserted negligence in possessing itself of the property has no relation to the sales price that in all probability it would

have received. The question certified, as stated in the outset, must be answered in the negative.

The order, therefore, of the referee is affirmed.